[No. B187661. Second Dist., Div. Eight. Feb. 20, 2008.]

CYTODYN OF NEW MEXICO, INC., Plaintiff and Appellant, v. AMERIMMUNE PHARMACEUTICALS, INC., et al., Defendants and Respondents.

## COUNSEL

Mundell, Odlum & Haws, Thomas C. Mundell and Marshall L. Brubacher for Plaintiff and Appellant.

Law Offices of Bruce M. Lorman and Bruce M. Lorman for Defendants and Respondents Kimberly L. Cerrone, Michael Davis, Pamela Kapustay, O.B. Parrish, and Maya LLC.

No appearance for Defendant and Respondent Amerimmune Pharmaceuticals, Inc.

OPINION

RUBIN, J.—

## SUMMARY

The trial court erred in awarding attorney fees under a provision of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), which authorizes an award of fees if a claim of misappropriation of trade secrets is made in bad faith. Plaintiff's complaint asserted a claim for unjust enrichment based on the alleged misappropriation of its patents and trademarks, and erroneously requested damages under the Uniform Trade Secrets Act. However, the complaint cannot be read as alleging a claim for misappropriation of trade secrets. The court also erred in concluding that attorney fees were recoverable under the indemnification clause of a licensing agreement. Accordingly, the order awarding attorney fees is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 11, 2003, CytoDyn of New Mexico, Inc. (CytoDyn), filed a lawsuit naming as defendants Amerimmune Pharmaceuticals, Inc., and several of its officers or directors, including Pamela M. Kapustay, Kimberly L. Cerrone, O.B. Parrish, and Michael A. Davis (officers and directors). Amerimmune Pharmaceuticals was dismissed from the case a few months later, after it filed a bankruptcy petition. In December 2003, an amendment to the complaint was filed adding Maya LLC as a Doe defendant. On March 23, 2004, CytoDyn filed a first amended complaint, alleging CytoDyn had assigned all of its assets and liabilities to CytoDyn so that the latter was "the properly-substituted plaintiff" in the lawsuit.

The operative first amended complaint (complaint) alleged as follows. Allen D. Allen, CytoDyn's president and chief executive officer, is the inventor of a class of monoclonal antibodies for the treatment of HIV disease, and is the owner of a portfolio of United States and foreign patents on his invention. In 1995, CytoDyn obtained a registered United States trademark on the brand name "Cytolin," referring to the antibodies used to improve immune function in persons infected with HIV, as reflected in Allen's patents. CytoDyn spent two years and almost $900,000 to develop and test materials and methods for manufacturing Cytolin. In August 1998, Allen and CytoDyn entered into an agreement with Three R Associates, Inc. (Termination, Sale and Shareholder Agreement), under which Allen transferred his rights and

interest in the "Technology" to Three R. ("Technology" was the term used to refer collectively to Allen's patents; patent rights; "Know-how"; products embodying or using any part of the patents, patent rights or know-how; and trade secrets. "Trade Secrets" was in turn defined as "all documents and information . . . that have been originated by, are peculiarly within the knowledge of or are proprietary to Allen . . . .")[1] Using a reverse triangular merger, Three R formed Amerimmune, a publicly traded company, and purchased the Technology and patent licensing rights from CytoDyn in return for stock in Amerimmune. Three R licensed the patents and Technology to Amerimmune under a "Patent and Trademark License Agreement," and Amerimmune assumed the obligation to pay Allen for the patent portfolio. Disputes arose, which Three R settled by assigning all of its rights back to CytoDyn, so that CytoDyn again became the licensor under the Patent and Trademark License Agreement. CytoDyn and Allen entered into a conditional licensing agreement (CLA) with Amerimmune under which CytoDyn licensed its trademarks (Marks) and Technology to Amerimmune on substantially the same basis as the earlier Patent and Trademark License Agreement.[2]

Disputes arose, the details of which are unnecessary to outline, with CytoDyn claiming that Amerimmune materially breached the CLA, allegedly entitling CytoDyn to terminate the agreement and requiring Amerimmune to transfer to CytoDyn and Allen all rights to the Technology and Marks. CytoDyn filed this lawsuit seeking an injunction and declaratory judgment requiring the Technology to be returned to CytoDyn and Allen. Shortly thereafter, defendant Parrish signed, on behalf of Amerimmune, a promissory note to defendant Maya LLC (which the complaint alleged was an alter ego of the CEO of Amerimmune), giving Maya LLC a security interest in all of Amerimmune's assets. Amerimmune then filed bankruptcy; its note to Maya LLC became due and payable; and Maya LLC foreclosed its security interest and claimed ownership of all Amerimmune's assets, including CytoDyn's

---

[1] The full definition of "Trade Secrets" was: "all documents and information in any form that have been originated by, are peculiarly within the knowledge of or are proprietary to [Allen] in whole or in part, and are subject to protection under recognized legal principles as trade secrets or otherwise pertaining or relating to, resulting from or useful in connection with the design, manufacture, installation, sales, marketing, administration, use, repair or operation of products, processes or services pertaining or relating to, resulting from or useful in connection with the Patents or Patent Rights or Know-how or Products . . . ."

[2] The CLA, like the earlier agreements, defined "Technology" to mean "the Patents, Patent Rights, Know-how, Products and Trade Secrets, . . . together with any improvements to any of the foregoing invented, created, developed or acquired by [Allen and CytoDyn] during the Term." The term "Trade Secrets" was likewise defined in the same way as in the earlier agreements. "Marks" included "all worldwide rights in and to the marks CYTODYN and CYTOLIN and all goodwill appurtenant thereto . . . ."

Technology. Amerimmune's bankruptcy case was dismissed; defendant officers and directors resigned; and Amerimmune ceased operations.

CytoDyn's complaint asserted a cause of action for inducement of breach of contract against the officers and directors, and three other causes of action—unfair business competition, fraud, and unjust enrichment—against Maya LLC and the officers and directors (collectively, defendants). In substance, CytoDyn alleged the officers and directors induced Amerimmune to materially breach the CLA in numerous respects; defendants allowed the CEO's alter ego, Maya LLC, to foreclose on its security interest, fraudulently claiming ownership in the patents and Marks; and defendants engaged in fraud in numerous respects, including assigning Maya LLC ownership of Amerimmune's assets, "including CytoDyn's Technology which under the terms of the CLA had already reverted to CytoDyn . . . ."

In its cause of action for unjust enrichment, CytoDyn alleged, in addition, that Maya LLC "fraudulently misappropriated marks and patents and related Technology without any consideration to CytoDyn." CytoDyn alleged that the fraudulent misconduct committed or ratified by the officers and directors rendered Amerimmune's stock worthless, depriving CytoDyn of any consideration for the technology it had licensed to Amerimmune and "also result[ing] in a misappropriation of the Technology." Further, "[b]ecause the misappropriation was [willful] and malicious, in accordance with [Civil Code section] 3426.3(c), CytoDyn seeks exemplary damages against Defendants in an amount up to twice the amount of out-of-pocket losses of $898,754.00 according to the discretion of the Court."

In its prayer for relief, CytoDyn sought a judgment declaring, among other things, that the officers and directors "induced Amerimmune to unjustly enrich itself in misappropriating [CytoDyn's] Technology by failing to pay the fees and to do the other things necessary to maintain the patents and marks . . . ." CytoDyn sought an injunction ordering defendants to return the license and related Technology to CytoDyn, and sought out-of-pocket damages of $898,754; punitive damages on the fraud claim; and, as to the unjust enrichment cause of action, "[p]ursuant to Civ. C.Sec. 3426.3(c), exemplary damages against Defendants in an amount up to twice the amount of out of pocket losses of $898,754.00." CytoDyn did not seek attorney fees in its prayer for relief.

Defendants filed a motion to strike CytoDyn's complaint, or alternatively enumerated paragraphs in it, on multiple grounds. While the motion to strike is for the most part irrelevant to this appeal, it included as its eighth point a claim that the facts alleged in CytoDyn's complaint did not support a claim of misappropriation of trade secrets, so that CytoDyn's claim for damages under Civil Code section 3426.3 should be stricken. The trial court granted that portion of defendants' motion on June 21, 2004.

CytoDyn's causes of action for unfair business competition, inducement of breach of contract and fraud were disposed of in July 2004, when the trial court sustained defendants' demurrers to those causes of action without leave to amend. Defendants sought summary judgment on the unjust enrichment claim, which the trial court granted on November 9, 2004. The court observed CytoDyn submitted an opposition separate statement with no citations to any admissible evidence; submitted an improper request for judicial notice; and otherwise made no attempt to submit evidence to support its contentions. Citing defendants' evidence, the court concluded none of the defendants received any benefit at the expense of CytoDyn.

Defendants then sought attorney fees of $147,708.75. They asserted a statutory right to recover attorney fees under the Uniform Trade Secrets Act, Civil Code section 3426.4, which permits an award of reasonable attorney fees and costs if a claim of misappropriation of trade secrets is made in bad faith.[3] In the alternative, defendants asserted they were entitled to recover attorney fees under the CLA, as well as under the Patent and Trademark License Agreement and several other agreements.

The trial court granted the motion for fees, finding fees were "properly awarded to defendants under . . . section 3426.4." The court based its conclusion on "[t]he numerous references to misappropriation of technology in the various complaints," which were "supported by [CytoDyn's] discovery responses in the documents and deposition testimony. The claims were certainly asserted, and it is clear now that there was no evidence to support them." The court found that the allegations of misappropriation were brought in bad faith,[4] and that apportionment of the fees was unnecessary, "since

---

[3] All further statutory references are to the Civil Code, unless otherwise specified.

[4] The court stated: "Claims that somehow [CytoDyn] itself [was] unaware of what was in the pleadings filed are belied by their deposition testimony and are not supportable. Those [disavowals,] to the extent the Court were to rely on them, give further weight to the claims of defendants that the allegations re misappropriation were brought in bad faith (if [CytoDyn] now claims it didn't know these misappropriation allegations were in the pleadings, and that somehow it should therefor[e] be insulated, isn't it suggesting that in fact these claims should not have been alleged? Isn't this some circumstantial evidence of at least recklessness?) In any event, the bad faith of counsel would be imputed to the client for purposes of this motion. The attempt now to argue that there were never any assertions of trade secrets misappropriation or

allegations relating to trade secret misappropriation were at the heart of most of [CytoDyn's] theories and allegations." The court stated that fees were also recoverable under the provisions of the CLA, "at the very least, and [the court] does not reach the applicability of the other contracts, but notes that [CytoDyn] did allege that numerous other contracts were binding on these defendants, and many of the other contracts contained broad attorney fee provisions which would encompass all these fees."

An order was entered granting fees in the amount of $147,708.75, plus $3,742.69 for disbursements not awarded as costs, for a total award of $151,451.44. CytoDyn filed this timely appeal of the order.

After oral argument, this court on its own motion ordered defendants to augment the appellate record with specified documents from the trial court record, as well as with "any other document filed in the trial court proceeding . . . reflecting the litigation of trade secrets issues before the trial court." Defendants submitted three volumes of documents, together with a 19-page memorandum. The court permitted CytoDyn to file a letter brief addressing defendants' memorandum and the significance of the documents in the augmented record. CytoDyn did so, and also moved to augment the appellate record with a copy of the trial court's minute order of June 21, 2004. (In the June 21 minute order, the trial court, among many other things, granted defendants' motion to strike the paragraph of CytoDyn's complaint seeking exemplary damages under the Uniform Trade Secrets Act.) Defendants filed an opposition to CytoDyn's motion to augment the record with the court's minute order. We granted CytoDyn's motion. In addition, after notifying the parties and permitting letter briefs, we took judicial notice, on our own motion, of defendants' answer to CytoDyn's complaint.[5]

## DISCUSSION

We conclude the trial court erred in awarding attorney fees under the Uniform Trade Secrets Act (UTSA), and likewise erred in concluding that

that [CytoDyn] never sought recovery for trade secret misappropriation are further circumstantial evidence of bad faith. Since subjective bad faith is often determined based on circumstantial evidence, the Court believes it can consider the totality of circumstances addressed in the moving papers, in addition to the complete failure of [CytoDyn] to submit any evidence at all in opposition to the summary [judgment] motion."

[5] We note that, despite the lack of compliance with our order to desist from further briefing after the initial augmentation of the record, the court has fully considered all documents in the augmented record and all related arguments made by either party.

defendants could recover fees under the CLA or any other of the contracts mentioned in the complaint. We discuss first the statutory claim for fees and then turn to the contract claims.

### A. *Section 3426.4.*

■ We begin with a brief description of the statute. The UTSA, codified in sections 3426 through 3426.11, authorizes a court to enjoin the actual or threatened misappropriation of trade secrets. (§ 3426.2.) The statute allows a complainant to recover damages for the actual loss caused by a misappropriation, and to recover for the unjust enrichment caused by the misappropriation. If willful and malicious misappropriation of trade secrets exists, the court may award exemplary damages of double the amount of the damage award. (§ 3426.3, subds. (a), (c).) The UTSA also has provisions governing preservation of the secrecy of an alleged trade secret in the judicial proceeding, privileged communications, and other matters. It provides for an award of attorney fees "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists . . . ." (§ 3426.4.) **(2)** "Misappropriation" is defined as either the acquisition of a trade secret of another by a person who has reason to know the trade secret was acquired by improper means, or the disclosure or use of a trade secret without consent by a person under various circumstances involving its acquisition by improper means (or in some circumstances, accident or mistake). (§ 3426.1, subd. (b).) " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." (§ 3426.1, subd. (a).)

As is obvious from the statute, the misappropriation for which a complainant may obtain relief is solely confined to the misappropriation of a trade secret, and likewise the attorney fees a prevailing party may obtain are for the malicious misappropriation of a trade secret, or for a claim of misappropriation of a trade secret made in bad faith. A trade secret is defined in the statute as "information . . . that . . . [¶] . . . [d]erives independent economic value . . . from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and . . . [¶] . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (§ 3426.1, subd. (d)(1), (2).)

■ In this case, CytoDyn's complaint did not state a claim for misappropriation of a trade secret. This is so under the most liberal reading of the complaint. (See *Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1486, fn. 9 [California courts would liberally construe the allegations in a complaint and attempt to determine if the factual allegations were sufficient to state a claim

under the UTSA].) Under the UTSA, a prima facie claim for misappropriation of trade secrets "requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1665 [3 Cal.Rptr.3d 279].) It is impossible to construe the factual allegations of CytoDyn's complaint as sufficiently stating, or even as attempting to state, a claim for misappropriation of a trade secret under the UTSA. Indeed, the phrase "trade secrets" does not appear anywhere in the body of CytoDyn's complaint, except in an allegation describing the assertion of a trade secret privilege by defendants.

■  We recognize that CytoDyn's complaint requested, in its prayer for relief, double damages under the UTSA's section 3426.3. We are likewise aware that, in various responsive pleadings filed by CytoDyn (in opposition to defendants' motion to strike the complaint, and in opposition to summary judgment), CytoDyn supported its assertion that it was entitled to double damages under section 3426.3 by pointing out that the "Technology" was defined in various agreements to include trade secrets.[6] The fact remains, however, that CytoDyn did not allege, or even try to allege, a prima facie case for misappropriation of a trade secret. It is impossible to read CytoDyn's complaint without concluding that the sum and substance of its lawsuit was

---

[6] CytoDyn's principal references to misappropriation of trade secrets (some of which occurred after the trial court had already stricken its claim for damages under § 3426.3) were:

(1) CytoDyn's opposition to defendants' motion to strike the complaint stated that there was a "knowing misappropriation of the trade secrets of Allen." CytoDyn stated the CLA defined the intellectual property being licensed as including trade secrets; it was doubtful that Maya was the holder of any trade secret privilege; trade secrets were defined as being in the custody and possession of CytoDyn and Allen; defendants knew "the Technology, including trade secrets, were at issue in this lawsuit"; and "[w]e are entitled to the damages listed in [section] 3426.3(c)."

(2) In its summary judgment opposition, CytoDyn stated that even if only Maya were unjustly enriched, "the other defendants conspired to deprive CytoDyn of its Technology, which is a crime in California . . . ." CytoDyn then cited, among other things, a federal statute making conspiracy to commit a "theft of trade secrets related to a product for interstate commerce" a federal felony. CytoDyn concluded by stating that "we have stated a claim for conspiracy to hinder . . . CytoDyn's demand for return of the Technology and for misappropriation of its trade secrets resulting in unjust enrichment . . . ." Similar statements appeared in CytoDyn's opposition separate statement.

(3) In response to a request for admission, CytoDyn asserted it was entitled to recover damages under section 3426.3. And, in response to a deposition question whether CytoDyn claimed that Amerimmune misappropriated patents, Allen answered that "[i]t's CytoDyn's claim that it received no consideration for the Technology, capital T—. . . ." (Allen subsequently said, "the answer . . . is yes, CytoDyn feels that its rights to the patents were misappropriated by Amerimmune . . . .")

the alleged misappropriation of its patents and trademarks.[7] Indeed, in their memorandum in support of their motion for attorney fees, defendants themselves expressly state that "the core theme of all of the causes of actions [*sic*] contained in [CytoDyn's] complaint was that Defendants misappropriated [CytoDyn's] patents and marks." But patents and marks are not trade secrets, and the misappropriation of patents and marks is not a subject with which the UTSA is concerned. (See *Motorola, Inc. v. Fairchild Camera and Instrument Corp.* (D.Ariz. 1973) 366 F.Supp. 1173, 1186 ["plaintiff's trade secret claims must fail because . . . no real effort was made by plaintiff prior to trial to keep them secret . . ." and they were also either revealed in the marketed product or "fully disclosed by issued patents"].) Consequently, we cannot conclude that, simply because CytoDyn's complaint erroneously—or in bad faith—requested exemplary damages under the UTSA, CytoDyn's lawsuit constituted a claim for misappropriation of trade secrets. (See also *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 571 [264 Cal.Rptr. 883] ["factual allegations of the complaint are controlling over the title or label given the pleading and over the prayer or demand for relief . . ."].)

One further point is worth noting. In addition to defendants' express acknowledgment that the core theme of CytoDyn's complaint was the misappropriation of its patents and Marks, their answer to CytoDyn's complaint likewise suggests they did not believe CytoDyn had actually asserted a claim for misappropriation of trade secrets. Defendants' answer expressly prayed for attorney fees under Code of Civil Procedure section 128.7—which allows the court to impose an appropriate sanction on attorneys or parties

---

[7] All of the complaint's allegations referring to misappropriation show that CytoDyn's claims were directed in substance to misappropriation of its patents and Marks. CytoDyn alleged:

(1) Defendants engaged in unfair competition, inducing Amerimmune to breach the CLA and the Patent and Trademark License Agreement, and committed fraud by allowing Maya to foreclose its security interest, "thereby fraudulently claiming ownership in the patents and marks without consideration . . . ."

(2) The officers and directors induced Amerimmune to breach its obligations by failing to pay for the maintenance and prosecution of patents, but continued to enjoy the benefits of the patents, "thereby misappropriating to itself the patents."

(3) "Maya has fraudulently misappropriated marks and patents and related Technology . . . ."

(4) The fraudulent conduct of the officers and directors rendered the stock of Amerimmune worthless, "thereby depriving CytoDyn of any consideration for the Technology it had licensed to Amerimmune . . . . This also resulted in a misappropriation of the Technology."

(5) Certain officers and directors knew of the "misappropriation of the Technology, and took no steps to stop it and instead participated directly in, and ratified, it."

(6) CytoDyn asked for a declaratory judgment, as to its unfair business competition claim, to the effect that "Defendants induced Amerimmune to unjustly enrich itself in misappropriating [CytoDyn's] Technology by failing to pay the fees and to do the other things necessary to maintain the patents and marks . . . ."

who sign pleadings that are presented for an improper purpose, or are unwarranted by law or without evidentiary support. Thus, while defendants clearly maintained CytoDyn was proceeding in bad faith, it made no attempt to plead entitlement to fees under section 3426.4 for a bad faith claim of misappropriation of trade secrets.[8]

Finally, we do not disagree with the trial court's observation that the cause of action for unjust enrichment contained several references to "misappropriation of technology," or that "Technology" was defined in various agreements to include trade secrets. Nor do we disagree with the court's conclusions that no evidence was presented to support CytoDyn's misappropriation claims, and that CytoDyn's conduct of the lawsuit under "the totality of circumstances" evinced bad faith. However, where statutory attorney fees are concerned, the trial court is constrained by the statute, as we are. The trial court's award of fees was premised on an erroneous application of the statute, as well as on its conclusion that "allegations relating to trade secret misappropriation were at the heart of most of [CytoDyn's] theories and allegations." The last conclusion is clearly erroneous and finds no support in the record. It may certainly be said that misappropriation of its patents and Marks was at the heart of CytoDyn's lawsuit, but, as we have observed, patents and marks are not trade secrets.[9]

---

[8] Cases in which attorney fees have been awarded under section 3426.4 likewise serve to illustrate that CytoDyn's lawsuit was simply not a trade secrets misappropriation case. See, e.g., *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1253, 1263 [116 Cal.Rptr.2d 358] (affirming order for attorney fees for bad faith prosecution of claim for misappropriation of trade secrets; plaintiff alleged defendant misappropriated identity of a company and die drawings needed for extrusion of aluminum parts for a workbench, but complaint was filed long after the identity of the company and the die drawings arguably held any economic value); *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 41–42, 43, 49–51, 54–55 [6 Cal.Rptr.2d 602] (award of fees to plaintiff where defendants [two former employees and their company] misappropriated protectible trade secrets [plans and designs for plaintiff's technologically complex products for military and other industries]; jury found defendants' misappropriation was done with malice); see also *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 551 [66 Cal.Rptr.3d 1] (suit alleging former employee misappropriated trade secrets by using computer source code to create competing products; plaintiff failed to establish code constituted a trade secret); *Ajaxo Inc. v. E*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 26–27, 64 [37 Cal.Rptr.3d 221] (remanding for new trial on damages for defendant's misappropriation of plaintiff's trade secrets; defendant disclosed proprietary information relating to plaintiff's sophisticated stock trading technology to a third party).

[9] Defendants contend CytoDyn is barred from arguing that it did not allege a claim for misappropriation of trade secrets by the doctrine of judicial estoppel and by its "judicial admissions." Neither doctrine applies. The doctrine of judicial estoppel "applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or

■ In short, the UTSA does not authorize an award of attorney fees when a claim of misappropriation of a patent or a trademark is made in bad faith; the act applies only to trade secrets. Consequently, because CytoDyn's complaint cannot be read to allege a cause of action for misappropriation of trade secrets, we are compelled to conclude the trial court erred in awarding attorney fees under section 3426.4.

### B. *The CLA indemnification clause.*

The trial court ruled in the alternative that defendants were entitled to attorney fees under the provisions of the CLA. This was error. The CLA—an agreement between CytoDyn and Allen, on the one hand, and Amerimmune, Inc., on the other—has no attorney fees clause. Defendants rely on an indemnification clause, but on its face the indemnification clause does not apply to this lawsuit. CytoDyn agreed to indemnify Amerimmune and its officers and directors from any claims or lawsuits, including attorney fees, resulting from or arising out of two circumstances (and a third circumstance not claimed to be relevant here):

1. Any breach of the CLA by Allen or CytoDyn; and

2. "[A]ny claim that Amerimmune's exploitation of any rights in the Technology and the Marks herein licensed infringes or violates any patent, copyright, trademark or other right *of any third party* . . . ." (Italics added.) Defendants claim they are entitled to attorney fees under both clauses, but

---

mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 [12 Cal.Rptr.3d 287, 88 P.3d 24], quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) CytoDyn was not "successful in asserting the first position," so the doctrine of judicial estoppel is not relevant. Ironically, the judicial estoppel argument would more aptly apply to defendants, who *successfully* asserted in their motion to strike CytoDyn's complaint that the facts alleged in the complaint "[did] not support a claim of any misappropriation by any of the Defendants of any trade secrets." Nor was CytoDyn's prayer for damages a binding judicial admission. The allegations in a plaintiff's complaint constitute judicial admissions, and are " 'conclusive concessions of the truth of a matter and have the effect of removing it from the issues' " (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324 [53 Cal.Rptr.3d 494]), so that " ' "a pleader cannot blow hot and cold as to the facts positively stated." ' [Citation.]" (*Ibid.*) However, "a mere conclusion, or a 'mixed factual-legal conclusion' in a complaint, is not considered a binding judicial admission. [Citation.]" (*Ibid.*) CytoDyn's prayer for double damages under the UTSA was not a factual allegation and cannot have been a binding judicial admission.

The wisdom of the rule that references in a prayer generally may not form the basis for estoppel is seen in this case: CytoDyn's prayer seeks exemplary damages under section 3426.3 but does not ask for attorney fees under section 3426.4, the very provision under which fees were ordered against CytoDyn. (See generally *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 463–470 [3 Cal.Rptr.3d 563].)

they are plainly mistaken. This lawsuit involved no finding (and no assertion, so far as the record reveals) of any breach of the CLA by CytoDyn. Defendants claim they are entitled to indemnification under the second circumstance because CytoDyn agreed to indemnify them "from any claim of infringement of any patent or trademark." But in their brief defendants use an ellipsis, omitting the critical words of the indemnification clause, which on its face applies only to claims of infringement of the patents of third parties. Defendant officers and directors are not entitled to attorney fees under the CLA.

### C. *The attorney fees clauses of other agreements.*

Defendants assert they are entitled to attorney fees under the attorney fees clauses of several other agreements. They are mistaken in each case. None of the defendants is a party to those agreements, and in two cases neither is CytoDyn. The mere mention of an agreement in a complaint does not mean, as defendants seem to believe, that the lawsuit has been brought to enforce those agreements. Moreover, even if defendants were parties to the agreements, the attorney fees clauses in most instances do not cover this lawsuit. Thus:

—The Patent and Trademark License Agreement. This was an agreement between Three R Associates, Inc., and British Lion Medical, Inc. (the premerger predecessor of Amerimmune), under which Three R Associates licensed the Technology to Amerimmune. After various disputes, Three R's rights reverted to CytoDyn. CytoDyn's complaint alleged defendant officers and directors induced Amerimmune to breach the agreement in various ways, such as refusing inspection rights to Allen. Defendants rely on clause 14(f) of the agreement. Clause 14 is the "binding arbitration" clause of the agreement, and requires all disputes relating to the agreement, including all tort and contract actions, to be resolved by binding arbitration, "subject to the following limitations." In subclause (f), the parties agree that neither of them will commence litigation against the other arising out of the agreement "with respect to any arbitration proceeding or award, except in a court located in the State of California." Subclause (f) continues: "If either party [now CytoDyn and Amerimmune] brings any action for judicial relief with respect to any dispute which is required to be arbitrated hereunder, the party bringing such action will be liable for and shall immediately pay all of the other party's costs and expenses (including reasonable attorneys' fees) incurred to stay or dismiss such action and remove or refer such dispute to arbitration." Defendants are not entitled to attorney fees under the Patent and Trademark License Agreement because (1) neither the officers and directors nor Maya

LLC are parties, and (2) the attorney fee clause expressly applies only to attorney fees incurred "to stay or dismiss [an action for judicial relief required to be arbitrated] and remove or refer such dispute to arbitration." Nothing of the sort happened in this case.

—The Termination, Sale and Shareholder Agreement and the August 1, 1998 consulting agreement. In its complaint, CytoDyn alleged that defendant officers and directors "also induced Amerimmune to breach the spirit, intent, and letter of the consulting agreement into which Allen and Three R entered on August 1, 1998 and which was referenced and incorporated into the Termination, Sale, and Shareholder Agreement dated August 1, 1998, which agreement was referenced in the CLA . . . and binding on Defendants." The consulting agreement, CytoDyn alleged, stated that Allen was the best judge of how to develop new technologies for the benefit of Three R. Based on this allegation, defendants claim they are entitled to attorney fees under the attorney fee clauses of both agreements. However, neither CytoDyn nor defendants are parties to the consulting agreement, under which Three R Associates engaged Allen as a consultant.[10] The attorney fee clause of the Termination, Sale and Shareholder Agreement (the parties to which were Three R Associates, Allen and CytoDyn) provided that the unsuccessful party "[i]n any action at law or in equity and in any arbitration proceeding to enforce any of the provisions or rights under this Agreement" was to pay attorney fees incurred by the successful party or parties. The clause does not apply because (1) defendants are not parties to the agreement, and (2) CytoDyn did not sue to enforce any of its rights under the agreement.

Finally, defendants claim that, even if the various agreements could not be enforced against them, they are entitled to attorney fees under the reciprocity provisions of section 1717, because CytoDyn "would have been entitled to recover attorney fees if it had prevailed . . . ." This too is mistaken. CytoDyn did not seek to enforce any of the agreements, and would not have been entitled to fees under those agreements even if it had, because defendants were not parties. The rule under section 1717 is that "a prevailing party is entitled to attorney fees only if it can prove it would have been liable for attorney fees had the opponent prevailed." (*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One, supra*, 111 Cal.App.4th at p. 467.) Defendants have not and cannot make such a showing.

---

[10] The same is true of an October 24, 1998 agreement between Western Center for Clinical Studies (WCCS) and British Lion Medical, "which was binding on Amerimmune as the successor to" British Lion Medical, and which stated that WCCS had a duty to work with and assist Allen. Neither CytoDyn nor defendants are parties to the agreement.

## DISPOSITION

The order awarding attorney fees is reversed. CytoDyn is entitled to recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.