Filed 6/2/15  Mountains Recreation and Conservation Auth. v. City of Whittier CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MOUNTAINS RECREATION AND CONSERVATION AUTHORITY,<br><br>    Plaintiff, appellant and respondent.<br><br>    v.<br><br>CITY OF WHITTIER et al.,<br><br>    Defendants, appellants and respondents;<br><br>MATRIX OIL CORPORATION et al.,<br><br>    Real parties in interest, appellants and respondents. | B253245<br><br>(Los Angeles County Super. Ct. Nos. BS135187, BS136211, BS138796) |
| LOS ANGELES COUNTY REGIONAL PARK AND OPEN SPACE DISTRICT et al.,<br><br>    Plaintiffs, appellants and respondents,<br><br>    v.<br><br>CITY OF WHITTIER et al.,<br><br>    Defendants, appellants and respondents;<br><br>MATRIX OIL CORPORATION et al.,<br><br>    Real parties in interest, appellants and respondents. | |

APPEAL from the judgment of the Superior Court of Los Angeles. James C. Chalfant, Judge. Affirmed as modified and remanded with directions.

John F. Krattli and Mark J. Saladino, County Counsel, and Scott Kuhn, Deputy County Counsel; Glaser Weil Fink Howard Avchen & Shapiro, Patricia L. Glaser, and Sean Riley; Greines, Martin, Stein & Richland, Timothy T. Coates, and Alana H. Rotter for Plaintiffs, Defendants, Appellants and Respondents Los Angeles County Regional Park and Open Space District, County of Los Angeles and Los Angeles County Board of Supervisors.

Law Offices of Woosley & Porter, Eric A. Woosley, and Jordan T. Porter for Real Parties in Interest, Appellants, and Respondents Matrix Oil Corporation and Clayton Williams Energy, Inc.

Richards, Watson & Gershon, James L. Markman, and Ginetta L. Giovinco for Defendants, Appellants, and Respondents City of Whittier and City Council of City of Whittier.

Pircher, Nichols & Meeks, James L. Goldman, and J. Michelle Hickey for Plaintiff, Appellant and Respondent Mountains Recreation and Conservation Authority.

_____

The City of Whittier purchased 1,280 acres of undeveloped land financed by a grant from the Los Angeles County Regional Park and Open Space District (the District).[1] The grant was authorized by Proposition A, an initiative approved by Los Angeles County voters to provide money for parks, wildlife, and open space preservation. Under a "Project Agreement" between Whittier and the District, Whittier agreed to submit any proposed leases to the District for its review and approval. Whittier

---

[1] The City of Whittier and the City Council of the City of Whittier were separately named as defendants. We will refer to them collectively as "Whittier." The County of Los Angeles and the Los Angeles Board of Supervisors were also named defendants. Because their interests are aligned with the District, we do not refer separately to them in our discussion.

2

thereafter entered into a lease with real parties in interest Matrix Oil Corporation and Clayton Williams Energy, Inc. (collectively, Matrix) allowing Matrix to drill for and produce oil on seven acres of the protected land (the Lease). Whittier did not obtain the District's approval of the Lease.

This lawsuit was commenced by Mountains Recreation and Conservation Authority (MRCA), which eventually settled and dismissed its claims prior to judgment. The District, as cross-complainant and petitioner, challenged Whittier's actions and its claim to proceeds from the oil drilling project on the grounds that the actions violated Proposition A, the public trust doctrine, the Project Agreement, and the California Environmental Quality Act (CEQA). Following a bench trial, the court concluded that the District's Proposition A and public trust doctrine claims were barred by the statute of limitations, and denied the CEQA claims on the merits. It ruled in favor of the District on its claim that Whittier had breached the Project Agreement by entering into the Lease without the District's consent. The court ordered specific performance of the prior approval requirement and enjoined the oil drilling project until June 30, 2015, the date the Project Agreement terminates. The court also declared that Whittier may not, during the term of the Project Agreement, spend proceeds from the Lease in a manner that violates the Project Agreement. All parties appealed.[2]

We agree with the trial court that Whittier violated the Project Agreement. We disagree, however, that the injunctive and declaratory relief should terminate at the end of the term of the Project Agreement. We modify the judgment accordingly.

---

[2] The District filed the first notice of appeal. Whittier, Matrix, and MRCA filed notices of appeal and cross-appeal. MRCA, which initiated this lawsuit and asserted claims against Whittier similar to the District's claims, is now aligned with Whittier and Matrix on appeal. In discussing the contentions of the parties, our references to Whittier's contentions and arguments include the contentions and arguments made by Matrix and MRCA.

3

## FACTUAL SUMMARY

1.     *Proposition A and the Grant for the Whittier Hills Project*

Los Angeles County voters approved Proposition A in 1992. Among other purposes, the initiative authorized property assessments and bonds to fund "grants to public agencies for the acquisition, development, improvement, rehabilitation, or restoration of real property for parks and park safety, . . . recreation, wildlife habitat or natural lands . . . ." The initiative created the District, which is charged with the duty to "take all actions necessary and desirable to carry out the purposes of [Proposition A]."

The District created a "Procedural Guide" to "assist agencies applying for grant funds" under Proposition A. According to the Procedural Guide, the recipient of a grant must "submit for prior District approval any proposed operating agreement, lease, management contract, or similar arrangement with a non-governmental entity that relates to the project or the project site. Prior District approval of all non-governmental use, operations, management or other activity on the site is necessary during, <u>and after</u>, the project performance period."[3] (Underline in original.)

Under the Procedural Guide, income from non-recreational uses of the property must be used "for recreation development, additional acquisition, operation or maintenance at the project site, unless the District approves otherwise." If income from non-recreational use is not used for such purposes and the District does not approve of another use, the applicant must return such income to the District.

---

[3]    The project performance period in this case ended on December 31, 1995. The "project" referred to in the Procedural Guide and the Project Agreement is the acquisition of property by Whittier with a grant funded by Proposition A. It should not be confused with Matrix's oil drilling project.

2.      *Whittier's Grant Application and Project Agreement*

Whittier applied for a grant of Proposition A funds in July 1993. District and Whittier thereafter entered into a "Project Agreement." The agreement incorporates the Procedural Guide. The District agreed to grant to Whittier $9.3 million to acquire 4,000 acres of certain land to "preserve portions of the last remaining chaparral, native oak woodlands and coastal sage scrub ecosystems within eastern Los Angeles County." Whittier agreed to the following: (1) "submit for prior District review and approval any and all existing or proposed operating agreements, leases, concession agreements, management contracts or similar arrangements with non-governmental entities, and any existing or proposed amendments or modifications thereto, as they relate to the project or the project site for a period of twenty (20) years from the date of this Agreement"; (2) not "permit the use of any portion of the Project by any private person or entity, other than on such terms as may apply to the public generally" without the prior written consent of the District; (3) "use the property acquired . . . only for the purpose for which [Whittier] requested District grant monies and . . . not permit any other use of the area, except as allowed by [the District]"; (4) maintain and operate the Property in perpetuity subject to Proposition A, provided it may transfer this responsibility "[w]ith the District's approval"; and (5) use any income received from non-recreational uses "for recreation development, additional acquisition, operation or maintenance at the Project site, unless the District approves otherwise in writing." The Project Agreement also required Whittier, upon sale or other disposal of less than the entire interest in the property, to reimburse the District "an amount equal to the greater of: 1) an amount equal to the proceeds; or 2) the fair market value."

The Project Agreement provided that in the event of a breach by Whittier, repayment of the grant funds would be inadequate to compensate the District. Therefore, "the appropriate remedy . . . shall be the specific performance of this Agreement, unless otherwise agreed to by the District." The right to specific performance, however, did not "limit in any way the District's legal or equitable remedies under this [Project] Agreement."

The term of the Project Agreement "is from the date of execution by both parties through June 30, 2015."

3. *Whittier's Purchase of Land with Proposition A Funds and the Chevron Declaration*

Whittier used its Proposition A grant to acquire two parcels of land. One is a 960-acre parcel (the Chevron Tract) previously owned by Chevron U.S.A. Inc. (Chevron); the other is a 320-acre parcel known as the Unocal Tract. Together, these parcels became part of the Puente Hills Landfill Native Habitat Preserve (the Preserve).

Whittier's purchase of the Chevron Tract involved a series of transactions closing on the same date in December 1995: Chevron transferred the property to the Trust for Public Land; the Trust for Public Land transferred the property to MRCA; and MRCA transferred it to Whittier.

At the same time Chevron transferred the property to the Trust for Public Land, it recorded a "Declaration and Easement of Restricted Use" (the Chevron Declaration). The express purpose of the Chevron Declaration is to place a conservation easement over 600 acres of the 960-acre Chevron Tract, "which land will be retained forever in a natural, undeveloped open space condition . . . for wildlife habitat and habitat restoration purposes and to prevent any use of [such land] that will impair or interfere with the conservation values of the [Chevron Tract]." The boundary of the proposed 600-acre conservation easement is not delineated. Once the boundary and form of the easement is agreed upon, Chevron "shall cause such Conservation Easement to be recorded." Upon the execution and recordation of the conservation easement, the parties shall record a release of the Chevron Declaration.

In August 1997, Whittier entered into a property acquisition and management agreement with Puente Hills Landfill Native Habitat Preservation Authority (Habitat Authority).[4] An express intent of the parties was that Habitat Authority would "maintain,

---

[4] The Habitat Authority is a joint powers authority created by the County of Los Angeles, Whittier, and County Sanitation District No. 2 of Los Angeles County.

6

preserve and protect" in perpetuity the Chevron and Unocal Tracts for "public open space and recreational uses on behalf of this generation and the generations to come."

4.    *The Lease and the Oil Drilling Project*

On October 28, 2008, Whittier and Matrix entered into the Lease, which allowed Matrix to explore, drill, and operate a portion of the Preserve for the production of oil and gas (the Project). The Lease permitted Matrix to construct and operate pipelines, power lines, tanks, buildings, and other structures necessary and proper for its operations. It also allowed for the relocation of existing roads and the building of new ones to accommodate the Project. Drilling and production facilities would cover no more than seven acres. Whittier would receive a fixed rent per acre plus royalties on the sale of oil and gas produced from the property. The Lease also required Matrix to pay certain fees to the Habitat Authority. The District projected the Project's revenue to be between $7.5 million and $115.4 million per year.

The Lease precluded any oil drilling activity prior to (1) the completion of an environmental review under CEQA, and (2) Whittier's issuance of a conditional use permit (CUP). In addition, the Lease provided that Whittier will not issue a CUP "until [Whittier] has obtained a release from protected area status from that portion of the Leased Land upon which surface operations are allowed under an issued [CUP] from the Los Angeles County Proposition A District." A similar release was required before Matrix could add additional drill sites.

Whittier did not obtain the District's approval of the Lease.

5.    *The Environmental Impact Report and Conditional Use Permit*

Matrix applied to Whittier for a CUP for the Project in April 2009. In an environmental impact report (EIR), the Project is described as a single pad with oil wells, an oil processing plant, a gas plant, and an oil-truck loading facility located on 6.9 acres. The Project would proceed in three phases: (1) drilling up to three test wells and assessing the quantity and quality of oil and gas produced; (2) construction of well cellars, the installation of gas and oil processing equipment, and transportation

7

facilities; and (3) drilling up to 57 more wells, as well as operation and maintenance of the gas and oil facilities and wells.

The draft EIR acknowledged that Whittier was required to obtain the District's consent "for certain proposed uses or development of the land for anything other than open space or recreational use." During the public comment period regarding the draft EIR, the District objected that the Project "would be incompatible with the specified use of lands acquired with Proposition A grant monies," and that Whittier was required "to obtain the consent of the District for proposed uses or development of the land for anything other than open space or recreational use." Whittier responded to the District's comments in the final EIR by stating: "If the Project is approved, [Whittier] will comply with all legal requirements under Proposition A."

On November 28, 2011, without the District's consent, Whittier certified the final EIR and approved the CUP for the Project.

The resolution certifying the CUP stated that "there are no existing conservation easements placed on the property that would prohibit" the Project, the Project would not violate the public trust doctrine, and it is not prohibited by Proposition A.

6. *Amendment of the Lease, the Chevron Release, and the Royalty Funding Agreement*

On May 8, 2012 the parties amended the Lease to omit the requirement that Whittier obtain a "release" from the District. The next day, Whittier's City Manager informed Matrix that the CUP for the Project "is now conveyed and effective[,] allowing [Matrix] to move forward . . . ."

Although Whittier claimed the Chevron Declaration did not preclude the Project, it nevertheless entered into an Amendment and Partial Release of Declaration and Easement of Restricted Use (the Chevron Release) with Chevron to "clarify that a restriction does not exist" for the Project. The Chevron Release excluded the seven acres designated for the Project from the Chevron Declaration. Whittier further agreed to create, within four years, the conservation easement required by the CUP and to seek from Chevron a complete release of the Chevron Declaration.

8

In August 2012, Whittier entered into a Royalty Funding Agreement (RFA) with the Habitat Authority. Under the RFA, Whittier agreed to pay Habitat Authority four percent of the royalties it received under the Lease, up to an annual maximum of $2 million.

Matrix made payments to Whittier pursuant to the Lease, which Whittier placed in its general fund account. Whittier tendered $325,000 to the District as payment for the portion of land to be used for the Project, which the District rejected.

**PROCEDURAL BACKGROUND**

MRCA commenced this action when it filed a complaint and petition for writ of mandate in February 2012 against Whittier and the District. In a first amended petition and complaint, MRCA alleged claims, among others, that Whittier violated Proposition A and its obligations under the public trust doctrine by approving the Project. MRCA sought damages and an injunction to stop the Project.

The District filed a cross-complaint and petition for writ of mandate alleging that Whittier had breached the Project Agreement, violated Proposition A and the public trust, and failed to comply with CEQA. It sought specific performance of the Project Agreement, injunctive relief, and declaratory relief.

After a trial in June 2013, the court ruled in favor of the District on its breach of contract claim. The court ruled against the District on its Proposition A and public trust claims on the ground that they were barred by the 90-day statute of limitations applicable to the grant of a CUP. (Gov. Code, § 65009.) The court rejected the District's CEQA claims on the merits.

In August 2013, MRCA settled its claims against Whittier and Matrix, and dismissed its petition and complaint. The court did not enter a judgment on those claims and they are not before us.

The court filed an initial judgment in October 2013 and, after resolving post-judgment motions by the District and Matrix, filed an amended judgment in December 2013. The amended judgment ordered specific performance of the Project Agreement's provision that Whittier obtain the District's consent before entering into any

9

lease or other agreement that changes the use, or disposes, of any portion of the property or allows the Project to proceed. It also enjoined Whittier and Matrix from activity on the property pursuant to the Project until the District approves of the Project or July 1, 2015, whichever occurs first. The court also declared "that during the term of the Project Agreement, which expires on June 30, 2015, Whittier is not entitled to spend rental income, royalties or other proceeds from the Lease in a manner that violates the Project Agreement." The court found in favor of Whittier on its statute of limitations claims regarding Proposition A and the public trust.

## DISCUSSION

1.      *Whittier's Breach of the Project Agreement and the District's Remedies*

Whittier contends: (1) the District's breach of contract claim is barred by the statute of limitations applicable to actions challenging a conditional use permit (Gov. Code, § 65009, subd. (c)(1)(E)); alternatively, (2) the District approved the Lease or waived the argument that it did not; (3) the District is not entitled to a declaration regarding its use of the Lease proceeds; and (4) the injunctive and declaratory relief in favor of the District should have terminated in November 2013. We disagree.

A.      *Statute of Limitations*

Whittier contends that the District's breach of contract claim is time-barred because it was not brought within 90 days of the grant of Matrix's CUP. It relies on Government Code section 65009, subdivision (c), which provides a 90-day statute of limitation for actions challenging certain planning and zoning decisions, including decisions granting a conditional use permit. (Gov. Code, § 65009, subd. (c)(1)(E); *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 765.) The trial court rejected this argument and agreed with the District that the applicable statute of limitations is in Code of Civil Procedure section 337, subdivision (1), which provides a four-year limitations period for actions upon a written contract. We review the court's ruling on the statute of limitations de novo. (*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1304.) We agree with the trial court.

10

The applicable statute of limitations depends on the gravamen of the cause of action. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22.) The gravamen is the nature of the right sued upon, not the form of action or the relief demanded. (*Ibid.*) The nature of the right is determined by ascertaining the primary interest that was invaded by the defendant's wrongful conduct. (*Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 122.) Here, the District's primary interests are the particular contract rights expressed in the Project Agreement, including the right to review and approve of proposed leases and other agreements relating to the property and to ensure that income from non-recreational uses of the property, such as oil drilling, are used in compliance with the agreement and Proposition A. These interests are ongoing and independent of any interest the District might have in challenging the issuance of the CUP. Because the gravamen of the District's breach of contract claim is the assertion of its contractual rights and remedies, the applicable statute of limitations is Code of Civil Procedure section 337, subdivision (1). Because the action was brought within four years of Whittier's alleged breach, the District's action is timely.

B.    *Whittier's Claim That the District Approved the Lease or Waived the Right To Assert That It Did Not*

Whittier argues that the District has, by its conduct, approved of the Lease or waived any argument that it has not. We disagree.

Although the trial court did not expressly address this issue, it impliedly rejected Whittier's argument by finding in favor of the District on its breach of contract claim. This implied finding is reviewed for substantial evidence. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267; see also *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [waiver is ordinarily a question of fact and trial court's finding is binding on appellate court if it is supported by substantial evidence].)

11

Whittier points to statements the District made in support of a demurrer in an earlier action that Proposition A does not prohibit, and indeed provides for, leasing and disposal of land purchased with Proposition A funds. Whittier suggests that the District is bound by the doctrine of judicial admissions. (See *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) This doctrine does not apply because the trial court in the prior action rejected the District's argument on this point. (See *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.* (2008) 160 Cal.App.4th 288, 299-300, fn. 9 [doctrine of judicial admissions does not apply when the party was not successful in asserting its first position].) The District is therefore not bound by such statements. Moreover, the District's prior statements addressed the language in Proposition A, not the Project Agreement, which unambiguously required the District's prior approval of the Lease.

Whittier also refers to communications with the District in which they discussed Whittier's payment of compensation or reimbursement to the District. Whittier points out that during the course of these discussions the District did not assert its right to prior approval of the Lease or indicate that it would not approve the Lease. Notwithstanding that alleged failure, the District did timely object to the proposed EIR on the ground that Whittier was required "to obtain the consent of the District for proposed uses or development of the land for anything other than open space or recreational use."

"Waiver requires . . . either an actual intention to relinquish [a known right] or conduct so inconsistent with any intent to enforce the right as to induce a reasonable belief that it has been relinquished. [Citations.] The waiver of a legal right cannot be established without a clear showing of intent to give up such right." (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 959.) The party asserting the waiver has the burden to prove it by clear and convincing evidence that does not leave the matter doubtful or uncertain. (*Ibid.*) Whittier's evidentiary showing is insufficient to satisfy this burden. At most, the communications show that the District did not assert its right of prior approval before the environmental review began, but made its objection on this ground known during that process. In any case, Whittier did not rely on the District's alleged tacit approval because it acknowledged in the Lease and the EIR its obligation to

12

obtain the District's consent to use "the land for anything other than open space or recreational use."

### C. *Whittier's Use of Lease Proceeds*

Whittier contends that the District is not entitled to the court's declaration that Whittier not spend rental income, royalties, or other proceeds from the Lease in a manner that violates the Project Agreement. First, Whittier argues that Proposition A does not restrict Whittier's use of Lease proceeds. Rather, it merely sets forth a "compensation mechanism" to apply when there is an unpermitted change in the use or disposition of the property. We need not address the requirements of Proposition A. The Project Agreement itself addresses the disposition of proceeds and income from any non-recreational use of the property. Paragraph D.10 of the Project Agreement requires Whittier, in the event of a sale or disposal of less than the entire interest in the property, to "reimburse the District an amount equal to the greater of: 1) an amount equal to the proceeds; or 2) the fair market value." Paragraph D.4 of the Project Agreement explicitly requires Whittier to use any "gross income" earned from non-recreational uses of the property "for recreation development, additional acquisition, operation or maintenance at the project site, unless the District approves otherwise in writing." The Project Agreement, therefore, explicitly compels Whittier to use "proceeds" from the disposition (i.e., the Lease) and "gross income" from non-recreational uses (i.e., the Project) as specified by its terms.

The trial court interpreted these provisions to include "rental income, royalties or other proceeds from the Lease." We agree with this interpretation. The court's judgment that Whittier apply the proceeds in a manner that does not violate the Project Agreement is proper.

Whittier also contends that the court's declaration regarding proceeds is barred by the 90-day statute of limitations applicable to attacks on a conditional use permit under Government Code section 65009. We disagree. The declaration governs the use of proceeds from the Project, not Matrix's permit to pursue the Project.

13

Next, Whittier argues that the judgment is contrary to Public Resources Code section 7055, which states that "[a]ny money accruing from leases under this chapter shall be paid into the general fund of the county or other public or quasi public corporation, body or agency for the use of the county or other public or quasi public corporation, body or agency, as the case may be." "[T]his chapter" includes Public Resources Code section 7051, which authorizes local governments to lease land "for the production of oil, gas and other hydrocarbons." (Pub. Resources Code, § 7051.) Nothing in section 7055 conflicts with the judgment. Section 7055 provides for payment of oil lease proceeds into the city's general fund; the judgment restricts how Whittier can *spend* the proceeds.

### D.    *Expiration Date of the Injunction*

The trial court enjoined the oil drilling activity until June 30, 2015, the date the Project Agreement terminates. Whittier contends that the injunction should have terminated on November 9, 2013. We review the court's interpretation and application of the Project Agreement de novo. (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.)

Whittier relies on paragraph D.5 of the Project Agreement, which requires the District's prior approval of proposed leases and amendments "for a period of twenty (20) years from the date of this Agreement." It argues that any relief for a breach prior to that date should terminate 20 years after November 9, 1993—the date the Project Agreement was signed by the last signatory. The trial court rejected this argument, but limited its injunction to June 30, 2015, the date the Project Agreement terminates by its express term. We disagree with both views.

Neither the 20-year period in paragraph D.5 nor the termination date of the agreement is relevant to the proper duration of injunctive and declaratory relief for a breach occurring during the term of the agreement. Once a breach occurred, the District was entitled to appropriate relief from that breach. The expiration of the Project Agreement itself did not eliminate the prior breach, which was entering into the unapproved Lease.

14

Because, as discussed above, activity under the Lease should be enjoined without regard to the termination date of the Project Agreement, the declaration limiting Whittier's use of any proceeds from that unapproved Lease should likewise have no termination date.

### E.    *District's Claim That the Lease Is Void*

The District contends that the court found that the Lease was void and erred by failing to so provide in the judgment. Whether the trial court made this finding or not, it is unnecessary to our decision because the remedy obtained by the District is the same whether the Lease is void or the District has the right to demand performance of the Project Agreement. The judgment for permanent injunction and declaratory relief, as we modify them, are appropriate and adequate remedies for Whittier's breach of the Project Agreement.

### 2.    *Because of Our Resolution of the Breach of Contract Claims, We Do Not Address the Proposition A and Public Trust Doctrine Claims*

The District contends that the court erred in finding its Proposition A and public trust claims time-barred under Government Code section 65009, subdivision (c)(1)(E). It further contends that those claims entitle it to relief. We need not reach these issues.

The District, in its cause of action for violation of Proposition A and the "public trust" sought the same relief it sought in its breach of contract cause of action. The judgment provided complete relief for that breach except for the duration of the relief, which duration we will modify. It is thus unnecessary for us to consider whether the alleged breach of other rights entitles the District to some relief.

### 3. *Alleged Violation of CEQA*

The District contends that the court erred in denying its claim that Whittier violated CEQA by failing to conduct an environmental review of its decision to approve the Chevron Release.[5] We reject the contention.

CEQA establishes a three-tier process to ensure that public agencies inform their decisions with environmental considerations. (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 379-380.) The threshold issue is whether the particular activity is a "project" as defined in CEQA and its implementing regulations, or "CEQA Guidelines." (See Cal. Code Regs., tit. 14, § 15000 et seq.) Activity that is not a project is not subject to CEQA. (*Muzzy Ranch Co., supra,* at p. 380.)

According to the CEQA Guidelines, a project "means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and that is . . . [a]n activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Cal. Code Regs., tit. 14, § 15378(a).) The term "refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies"; it "does not mean each separate governmental approval." (*Id.,* § 15378(c).)

Pursuant to CEQA, Whittier conducted an environmental review of the Project resulting in the completion of the EIR. The District does not challenge the adequacy of that EIR. It contends, however, that Whittier's subsequent approval of the Chevron Release constituted a distinct project requiring another environmental review. We disagree.

---

[5] In its cross-complaint and petition, the District alleged that Whittier had violated CEQA twice—by its 2012 amendment to the Lease and by approving the Chevron Release. The trial court rejected both claims. On appeal, the District asserts only the latter.

16

The 2012 Chevron Release has the effect of excluding the oil drilling area from the land that could be included within the conservation easement contemplated by the 1995 Chevron Declaration.  It thus ensures that the boundary of the conservation easement, when established, will not include the land designated for the Project.  By removing the possibility that a conservation easement would burden such land, the Chevron Release, *if viewed in isolation*, has the potential for resulting in a direct or reasonably foreseeable indirect physical change in the environment.  As the CEQA Guidelines direct, however, we must consider the whole of an action, not each separate approval.  Here, viewing the proposed Project as a whole, the Chevron Release merely accomplishes something that was part of the Project and fully vetted in the environmental review of that Project, namely, the use of the designated land for oil drilling.  That is, any possible effect on the environment that could result from the Chevron Release has been fully considered in the EIR concerning the Project.  In this light, the approval of the Chevron Release is not a separate project subject to CEQA.

The District relies on a CEQA Guideline that provides the "cancellation" of an open space easement "will normally be an action subject to the CEQA process." (Cal. Code Regs., tit. 14, § 15317.)  This Guideline does not alter our conclusion. Whatever is meant by "normally," it does not include the situation here—where the change to the environment already considered by the EIR is the same as the change made by the Chevron Release.

## DISPOSITION

The amended judgment filed December 10, 2013 is modified. Paragraph 1 of the amended judgment is deleted and replaced with the following:

"1. Judgment is entered in favor of the District and against Whittier on the Second and Fourth Causes of Action of the Cross-Complaint and the following relief is hereby issued in favor of the District:

(a) A permanent injunction restraining and enjoining Whittier and Matrix, and each of them and their agents, servants, employees, and representatives and all persons acting in concert or participating with them from engaging in, committing or performing, directly or indirectly, any activity or disturbance whatsoever on the Property in pursuit of, or related to, the Lease; and

(b) A declaration that Whittier is not entitled to spend any rental income, royalties, or other proceeds obtained pursuant to the Lease in a manner that violates the Project Agreement."

Further, pursuant to Code of Civil Procedure section 923, Matrix and Whittier are temporarily enjoined, pending the finality of this appeal, from engaging in, committing or performing, directly or indirectly, any activity or disturbance whatsoever on the Property in pursuit of, or related to, the Lease.

Whittier is also temporarily enjoined, pending the finality of this appeal, from spending any rental income, royalties, or other proceeds obtained pursuant to the Lease in a manner that violates the Project Agreement.

As modified, the judgment is affirmed. The matter is remanded to the trial court to determine the disposition of monies, if any, received by Whittier, or for its benefit, from or related to the Lease.

The District is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.                    JOHNSON, J.

18