[No. C039827. Third Dist. Aug. 19, 2003.]

M. PEREZ COMPANY, INC., Plaintiff, Cross-defendant and Appellant, v.
BASE CAMP CONDOMINIUMS ASSOCIATION NO. ONE et al.,
Defendants and Respondents,
KERRY MEEKER, Defendant, Cross-complainant and Appellant.

KERRY MEEKER, Plaintiff and Appellant. v.
BASE CAMP CONDOMINIUMS ASSOCIATION NO. ONE et al.,
Defendants and Respondents.

BASE CAMP CONDOMINIUMS ASSOCIATION NO. ONE et al.,
Plaintiffs and Respondents, v.
KERRY MEEKER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion parts I, II, III, IV, V, VI and VIII.

458

## Counsel

Law Office of Robert W. Scharf and Robert W. Scharf for Defendant, Cross-complainant and Appellant.

LaMore, Brazier, Riddle & Giampaoli, Eugene P. LaMore, and Gene D. Vorobyov for Plaintiff, Cross-defendant and Appellant.

David A. Bader and Timothy W. Pemberton for Defendants and Respondents.

## Opinion

**HULL, J.**—In this construction defects dispute, the general contractor, Kerry Meeker, doing business as Kerry Meeker Construction (Meeker), appeals from a postjudgment order denying his request for litigation expenses from the property owner, Base Camp Condominiums Association No. One (Base Camp), and a subcontractor, M. Perez Company, Inc., doing business as Henley & Company (Henley). The court concluded that Meeker failed to establish the existence of a contract containing a provision that would permit the recovery of litigation expenses. Henley also appeals from the order, contending it contains two clerical errors. We reverse the judgment, in part.

### FACTS AND PROCEDURAL HISTORY

Because the parties have failed to provide this court with a full record of the proceedings below, our review of the facts is severely limited. From the allegations in the pleadings, it appears that Meeker entered into an agreement with Base Camp to remodel the facade of a condominium complex owned by Base Camp, and Meeker entered into a subcontract with Henley to do the

stucco portion of the work. A dispute arose regarding performance by the parties under the agreements and liability for defects in the finished product.

On March 3, 1998, Henley sued Meeker and Base Camp. (Case No. 1599.) Henley alleged an April 23, 1997, agreement with Meeker, requiring Meeker to pay Henley $145,896 for labor and materials. Henley further alleged that Meeker breached the agreement by failing to pay $50,000 of the amount due. Henley sought damages in the amount of $50,000, plus attorney fees. The complaint also contained claims for quantum meruit and indebitatus assumpsit, again seeking damages of $50,000. Henley's fourth cause of action sought to foreclose on its mechanics lien. A copy of the alleged agreement was not attached to, or incorporated into, the complaint.

On April 14, 1998, Meeker sued Base Camp. (Case No. 1603.) Meeker alleged that he entered into a written agreement with Base Camp "on or about March 1997." A copy of the agreement was attached to and incorporated into the complaint. Meeker alleged that Base Camp breached the agreement, resulting in damages of $44,791.61. Meeker also alleged quantum meruit, seeking damages of $127,740.39. Meeker sought attorney fees "to the extent available by either contract, statute or bond."

On July 15, 1998, Base Camp filed a complaint against Meeker and Henley. (Case No. 1610.) Base Camp alleged an April 21, 1997, agreement with Meeker, whereby Meeker would be paid $348,941 for the construction of improvements at the condominium complex. A copy of the agreement was attached to and incorporated into the complaint. It is the same agreement as that attached to Meeker's complaint against Base Camp. Base Camp further alleged that Meeker entered into a written or oral agreement with Henley, to which Base Camp was a third party beneficiary.

Base Camp alleged five causes of action against Meeker and Henley: (1) breach of implied warranty; (2) negligence; (3) breach of contract; (4) breach of the covenant of good faith; and (5) breach of express warranty. On each cause of action, Base Camp sought compensatory damages of $500,000. It also sought attorney fees "as provided under the contract."

Base Camp's answers to the complaints of Meeker and Henley contained general denials and asserted a right to litigation expenses. Meeker's answer to Base Camp's complaint likewise contained a general denial. It also contained an affirmative defense asserting a right to indemnity from those "whose negligence and/or fault proximately contributed to [the] damages ..." and sought an award of attorney fees. Henley's answer to Base Camp's complaint asserted a general denial and an affirmative defense that the complaint failed to state a claim sufficient to allow Base Camp to recover attorney fees. Henley sought an award of attorney fees.

Meeker's answer to Henley's complaint is not in the record. However, the record does contain a cross-complaint filed by Meeker against Henley on October 23, 1998. In it, Meeker alleged breach of the April 23, 1997, agreement between Meeker and Henley and a right to indemnity with respect to the Base Camp action. Meeker later filed a first amended cross-complaint, naming two additional cross-defendants not parties to this appeal. Meeker asserted a right to indemnity from the cross-defendants for any judgment that might be entered against him on the complaints filed by Base Camp and Henley. Meeker also claimed a right to attorney fees.

Meeker filed a first amended complaint against Base Camp. For breach of contract, Meeker sought "undisputed" damages of $44,000, plus a penalty of 24 percent per year. Meeker also claimed approximately $166,405.93 for extra work on the project and $100,000 in consequential damages. On his quantum meruit claim, Meeker sought damages of $190,000. Meeker later filed a second amended complaint, alleging consequential damages of $180,000.

Prior to trial, Base Camp offered Meeker $115,000 in settlement pursuant to Code of Civil Procedure section 998. (Further undesignated section references are to the Code of Civil Procedure.) Henley made a section 998 offer to Base Camp to accept $17,500 in settlement.

The three cases were consolidated and tried to a jury. In case No. 1599, the jury returned a general verdict in favor of Henley and against Meeker. The jury awarded damages of $36,676 on the breach of contract claim and $26,654 on the quantum meruit claim. In the other two actions, the jury returned a special verdict. The jury concluded that Meeker was entitled to $44,665 on its contract with Base Camp. The jury also concluded that Meeker was entitled to reimbursement for various additional costs incurred by Meeker on the project, totaling $77,251.

On Base Camp's claims against the other parties, the jury concluded there was no breach of express or implied warranty or breach of contract regarding the "stucco system." However, the jury concluded there had been negligence by both Henley and Base Camp. The jury found Henley 10 percent and Base Camp 90 percent at fault, and found $7,500 in total damages for negligence in connection with the stucco. The jury found no breach of warranty, breach of contract or negligence with respect to the other aspects of the construction project.

The trial court entered judgment as follows: (1) Meeker to recover from Base Camp $98,531, plus interest from November 6, 2000; (2) Base Camp to recover nothing from Meeker; (3) Henley to recover from Meeker $36,676; and (4) Base Camp to recover from Henley $750.

Meeker filed a motion for indemnity and an award of prevailing party attorney fees. Meeker claimed a right to express and implied indemnity from Henley and a right to prevailing party fees from both Henley and Base Camp. Henley and Base Camp filed opposition. Henley also filed its own motion for prevailing party status.

On September 28, 2001, the trial court ruled as follows: (1) Meeker prevailed against Base Camp and is allowed his costs (excluding attorney fees) up to the time of Base Camp's section 998 offer; (2) Meeker prevailed against Henley and is allowed one-half of his costs (excluding attorney fees); (3) Henley is entitled to up to one-half of its costs from Base Camp in light of Henley's section 998 offer; and (4) Base Camp did not prevail against Henley, because the $750 recovered was much less than the $134,000 sought.

The court issued a contemporaneous statement of decision explaining the rationale for its ruling. The court indicated that although Meeker prevailed against Base Camp, the jury's special verdict did not contain a finding that a contract existed between those parties that would have permitted an award of litigation expenses. The court also explained that the special verdict contained no finding of a contract between Meeker and Henley that would have permitted an award of litigation expenses or that Base Camp was a third party beneficiary of such contract. Thus, although Henley prevailed against Meeker on Henley's claim, Henley was not entitled to prevailing-party attorney fees. In a subsequent ruling, the court awarded Meeker $2,238 in costs up to the time of Base Camp's section 998 offer.

Henley filed a motion to amend the judgment nunc pro tunc, contending that (1) the judgment incorrectly identified Meeker as the prevailing party against Henley when, in fact, Henley recovered $36,676; and (2) the award of *up to* one-half of Henley's costs from Base Camp is ambiguous. The record contains no ruling on this motion.

Both Meeker and Henley appeal from the September 28, 2001, order regarding indemnity and prevailing party fees.

## DISCUSSION

### I–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 456.

## VII

### PREVAILING PARTY LITIGATION EXPENSES FROM BASE CAMP PURSUANT TO THE MEEKER-BASE CAMP CONTRACT

No doubt recognizing that the indemnity provisions in addendum No. 2 to the Meeker-Base Camp agreement do not constitute a prevailing-party-attorney-fee provision, Meeker does not assert a direct right to recover attorney fees pursuant to that contract. Those provisions required Meeker to indemnify Base Camp against any third party claims arising from Meeker's performance under the agreement. This includes an obligation to "[r]eimburse [Base Camp] ... for any and all legal expense incurred" in connection with any action covered by the indemnity provisions or to enforce the indemnity. Such a clause is not a prevailing-party-attorney-fee provision within the meaning of Civil Code section 1717, but an enumeration of the scope of the indemnity. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1337 [93 Cal.Rptr.2d 635].)

Nevertheless, Meeker contends Base Camp is judicially estopped to deny that the Meeker-Base Camp agreement contained a prevailing-party-attorney-fee provision in light of Base Camp's request for attorney fees. As explained previously, Base Camp sought an award of attorney fees in its breach of contract claim against Meeker based on the Meeker-Base Camp agreement. Meeker argues that Base Camp alleged the existence of a prevailing-party-attorney-fee provision in the Meeker-Base Camp agreement and is now estopped to contend otherwise.

■ "Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850 [21 Cal.Rptr.2d 642].) It prohibits a party from taking inconsistent positions in the same or different judicial proceedings. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) Judicial estoppel " ' "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process .... 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' ... Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' [Citation.] 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' " (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 181.)

In *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175 [101 Cal.Rptr.2d 532] (*International Billing Services*), this court applied

judicial estoppel under circumstances similar to those presented here. There, the plaintiff company brought a trade secret action against three former employees and others and sought attorney fees pursuant to a provision of the employment agreements. (*Id.* at pp. 1179–1180.) The defendants prevailed and the trial court awarded them attorney fees. (*Id.* at pp. 1180, 1182.)

On appeal, the company argued that the agreement did not contain a prevailing party attorney fee clause but rather an indemnity provision. (*International Billing Services, supra,* 84 Cal.App.4th at pp. 1182–1183.) The provision in question required the employee to " 'promise to reimburse' " the company for attorney fees in the event of litigation. (*Id.* at p. 1182.) If the provision was an attorney fee provision, it was subject to reciprocity under Civil Code section 1717. If it was an indemnity provision, it was not. We concluded that any ambiguity in the provision must be construed against the drafter, i.e., the company (Civ. Code, § 1654), and, therefore, the trial court properly found that the provision authorized the fee award. (*International Billing Services, supra,* 84 Cal.App.4th at pp. 1184–1186.)

Having concluded that the provision permitted an award of attorney fees to the prevailing party, the matter before us was resolved. However, in dicta, we took the opportunity to address another chronic problem—the misuse of attorney fee claims. We explained: "[T]he question whether a given provision *is* a fees provision, which one might think was readily ascertainable, results in frequent, protracted, litigation which ties up the courts and parties long after the merits of a decision are settled. Time and again in civil cases, often those with parties willing and able to spend thousands or tens of thousands of dollars on the issue, the fees debate assumes a life of its own. 'The prospect of court-awarded attorney fees plays a significant part in determining a strategy for initiating or defending litigation. Litigation costs (including the potential fee award) can be enormous, sometimes rivaling or even exceeding the amount involved on the merits ....' [¶] ... [F]ee litigation has become a specialty of some lawyers and a 'fees phase' of cases is foreordained. This wasteful consumption of judicial resources and client money serves no public purpose and impairs the image of the legal profession." (*Id.* at pp. 1186–1187.)

In order to discourage overreaching attorney fee claims, we announced the following rule: "Where a party claims a contract allows fees and prevails, it gets fees. Where it claims a contract allows fees and loses, it must pay fees." (*International Billing Services, supra,* 84 Cal.App.4th at p. 1190.) In other words, even where the contract does not contain an attorney fee provision, if a party claims that it does and loses the case, it will be required to pay the prevailing party's attorney fees. *However, we emphasized that this rule* "applies only where a party brings a breach of contract action and the

contract contains some provision which the party asserts operates as a fees provision." (*Id.* at p. 1187.) Thus, it is not enough that the losing party claimed a nonspecific right to attorney fees. It must be a claim that a contract on which a cause of action for breach of contract is premised contains an attorney fee provision.

This is such a case. In its claim for breach of contract against Meeker, Base Camp alleged that it had performed all conditions, covenants and promises under its contract with Meeker, "which contract includes provisions entitling the prevailing party in this litigation to recover its costs and attorney's fees." However, a review of the contract reveals no prevailing-party-attorney-fee provision. Addendum No. 2 contains indemnity provisions, which provide that the indemnitor shall "[r]eimburse Owner or its officers, directors, members, agents, employees, or property manager, or any of them, for any and all legal expenses incurred by any of them in connection herewith *or in enforcing the indemnity granted in this Addendum ....*" (Italics added.) Through the reciprocity of Civil Code section 1717, this provision would permit the prevailing party in any action brought to enforce the indemnity to recover attorney fees. However, Base Camp did not seek indemnity in its complaint against Meeker.

Nevertheless, under the *International Billing Services* dictum, because Base Camp claimed a contractual right to attorney fees and lost its case, Meeker would be entitled to attorney fees. However, as we shall explain, we believe *International Billing Services* sweeps too broadly and decline to follow it in this instance.

*International Billing Services* was based primarily on Civil Code section 1717. We noted: "Generally, where the losing party would have obtained fees had it won, it is liable for fees if it lost, such as where a nonsignatory to a contract asserts entitlement to fees based on a contract, loses the case, then seeks to avoid an adverse fee award. [Citation.] The reciprocity provision of [Civil Code] section 1717 was designed to prevent overreaching in litigation. Absent the reciprocity provision, contracting parties with superior economic bargaining power would routinely insert one-sided fees provisions in contracts. In the event of a dispute, and regardless of the merits *vel non* of the disputant's claims, the drafting party would have an unfair litigation advantage from the outset: Even if it lost, it would only have to pay contract damages; if it won, the weaker party would also have to pay fees. 'One-sided attorney's fees clauses can thus be used as instruments of oppression to force settlements of dubious or unmeritorious claims. [Citation.] [Civil Code] [s]ection 1717 was obviously designed to remedy this evil.' " (*International Billing Services*, *supra*, 84 Cal.App.4th at pp. 1187–1188.)

We continued: " 'If a party to a contract can claim a right to recover attorney's fees pursuant to a provision in a contract and then deny the effect and application of that provision if his opponent prevails, [Civil Code] section 1717's purposes would be thwarted and attorney's fees claims could be used as instruments of oppression. Specifically, uncertainty about a party's rights and obligations with respect to ultimate recovery of attorney's fees would create pressure to settle unmeritorious claims.' " (*International Billing Services, supra,* 84 Cal.App.4th at p. 1188.)

While stating that we had "no quarrel with the cases holding Civil Code section 1717 was not designed 'to extend the right to recover attorney fees to persons who themselves could not have been required to pay attorney fees in the event their adversary prevailed in the action' " (*International Billing Services, supra,* 84 Cal.App.4th at p. 1189), we adopted a rule which did just that. If a party claims a contractual right to attorney fees, but the contract does not contain such a provision, that party will not be able to recover attorney fees, even if it prevails in the litigation. However, under *International Billing Services,* if the party loses the litigation, it will be required to pay the opponent's attorney fees.

In *Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295 [230 Cal.Rptr. 553], the beneficiary of a testamentary trust brought an action against lenders to remove a cloud on the title to real property that had been encumbered by loans to the trustee, and the trial court granted summary judgment to the lenders. The Court of Appeal affirmed, including the portion of the judgment denying the lenders' claim for prevailing party attorney fees. (*Id.* at pp. 1297–1298.) On the attorney fee claim, the court rejected an estoppel theory, explaining: "The California Supreme Court has determined that one may only recover attorney's fees pursuant to [Civil Code] section 1717 if one 'would have been liable' for such fees had the opposing party prevailed. (*Reynolds Metals Co. v. Alperson* [(1979)] 25 Cal.3d [124] 129 [158 Cal.Rptr. 1, 599 P.2d 83].) Judging by this language, *Reynolds* and [Civil Code] section 1717 require that the party claiming a right to receive fees establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party." (*Leach v. Home Savings & Loan Assn., supra,* 185 Cal.App.3d at pp. 1306–1307.)

In *Sessions Payroll Management, Inc. v. Noble Construction Co., supra,* 84 Cal.App.4th 671 [101 Cal.Rptr.2d 127], the prevailing defendant argued that it was entitled to an award of attorney fees because the plaintiff's complaint prayed for attorney fees. The trial court awarded such fees, but the Court of Appeal reversed. Relying on *Leach* and other cases rejecting an estoppel theory, the court explained: "[The *Reynolds Metals*] test requires a party claiming attorney fees to establish that the opposing party actually would

have been entitled to receive them if the opposing party had prevailed. The mere allegation in a complaint that the plaintiff is entitled to receive attorney fees does not provide a sufficient basis for awarding them to the opposing party if the plaintiff does not prevail. Where, as in *Leach*, the plaintiff did not sign the contracts containing attorney fee provisions, the plaintiff had no independent right to recover fees under contractual attorney fee clauses. Therefore the defendants, as prevailing parties, could not recover attorney fees from the plaintiff." (*Sessions Payroll Management, Inc. v. Noble Construction Co., supra*, 84 Cal.App.4th at pp. 681–682; see also *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 616–617 [43 Cal.Rptr.2d 399], disapproved on another ground in *Santisas v. Goodin*, 17 Cal.4th [599] at p. 609, fn. 5 [71 Cal.Rptr.2d 830]; *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 548–549 [20 Cal.Rptr.2d 193]; *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 962, fn. 12 [17 Cal.Rptr.2d 242]; *Wilson's Heating & Air Conditioning v. Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1333, fn. 7 [249 Cal.Rptr. 553].)

We believe the foregoing cases state the correct rule. ■ Consistent with both *Reynolds Metals Co.* and Civil Code section 1717, a prevailing party is entitled to attorney fees only if it can prove it would have been liable for attorney fees had the opponent prevailed. The problem with *International Billing Services* is that it assumes the underlying litigation is over the validity of the contract in general or the attorney fee provision in particular. Where a plaintiff claims breach of a contract containing an attorney fee provision and the defendant asserts there is no contract and wins, it will have established that there is no contract and, hence, no attorney fee provision. Nevertheless, since the plaintiff would have been entitled to attorney fees if the plaintiff had succeeded in proving there was a contract, courts have recognized a right of the defendant to recover attorney fees even if defendant proves there was no contract, in order to further the purposes of Civil Code section 1717. (See *Santisas v. Goodin, supra*, 17 Cal.4th at pp. 610–611; *Hsu v. Abbara,* 9 Cal.4th at pp. 870–871 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

However, where the underlying litigation is not over the validity of the contract or the attorney fee provision, this rationale disappears. ■ Where a plaintiff claims breach of a contract containing an attorney fee provision and the defendant does not deny the existence of the contract, litigating instead the issue of breach, success by the defendant does not entail a finding that there is no contract, and hence no attorney fee provision. The prevailing party, whether plaintiff or defendant, would be entitled to attorney fees under the contract. By the same token, where the contract does not contain an attorney fee provision, even though the plaintiff seeks attorney fees, success by the plaintiff on the breach of contract claim does not entail a finding of a valid attorney fee provision. The prevailing party would not be entitled to

attorney fees. Thus, the distinction is between success on the underlying claim of breach and success in proving there is an applicable attorney fee provision.

*International Billing Services* says: "Where a party claims a contract allows fees and prevails, it gets fees. Where it claims a contract allows fees and loses, it must pay fees." (*International Billing Services, supra,* 84 Cal.App.4th at p. 1190.) This conclusion is correct only if the litigation is over the validity of the attorney fee provision. A more precise statement of the rule would be: ■ Where a party claims that a contract allows fees and proves it, that party gets fees. Where a party claims that a contract allows fees and does not prove it, the opponent gets fees.

The fallacy of the rule stated in *International Billing Services* is the assumption that if the party who claims that a contract allows fees prevails in the underlying litigation, it gets attorney fees. In truth, the party must still prove that the contract allows attorney fees. The mere allegation is not enough. ■ It is only where the parties litigate the existence of an attorney fee provision and the party claiming such a right prevails that the party should be entitled to attorney fees. Under such circumstance, if the opponent succeeds in proving there is no attorney fee provision, it should be awarded its fees in order to further the purpose of Civil Code section 1717.

*International Billing Services* relied on the doctrine of judicial estoppel to reach the conclusion that a party claiming attorney fees is later estopped from denying an attorney fee provision. ■ As a general matter, judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud or mistake." (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 183.)

In *International Billing Services,* we paid little heed to the third requirement, explaining that "In some jurisdictions, judicial estoppel requires a prior success on the fact asserted. In this respect, it works as a corollary to issue preclusion. This assumes the estoppel works, if at all, only in subsequent litigation or proceedings, but this is not always so. [Citations.] The doctrine ' " 'is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process ....' " ' [Citations.] ' "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." ' [Citations.] The

principle is not limited to successive actions." (*International Billing Services, supra,* 84 Cal.App.4th at pp. 1190–1191.)

Assuming the application of judicial estoppel does not require proof of success on the first position taken, we nevertheless do not believe *International Billing Services* made proper use of the doctrine. As noted previously, judicial estoppel "is an equitable doctrine aimed at preventing fraud on the courts." (*In re Marriage of Dekker, supra,* 17 Cal.App.4th at p. 850.) It "is an extraordinary remedy that should be applied with caution." (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598 [90 Cal.Rptr.2d 510].) ▮ Where a litigant is uncertain that a contractual provision allows the recovery of attorney fees, it is not improper to assert a claim based on that provision, just as it is not improper for the opponent to claim the provision does not allow such recovery. But those parties should not be estopped thereafter to assert contrary positions if their interests become reversed. *International Billing Services* asserts that the plaintiff who claims a contractual right to attorney fees is estopped to claim otherwise after it loses the underlying litigation. However, the same principle should apply to the prevailing defendant. If the defendant denied that the plaintiff had a contractual right to attorney fees, it should be equally estopped to assert otherwise thereafter. There is no reason in law or logic why judicial estoppel should apply to one but not the other. Equity suggests that it apply to neither.

In *International Billing Services,* we discussed the policy reasons for applying the rule adopted therein: " 'For section 1717 to function as intended, parties need reasonable prospective assurance of whether they will or will not be able to recover their attorney's fees if they win, and whether they will have to pay their opponent's fees if they lose.' " (*International Billing Services, supra,* 84 Cal.App.4th at p. 1188.)

▮ Certainty that parties will or will not be able to recover attorney fees is not the purpose of Civil Code section 1717. That section is designed to assure fairness between the parties. As explained previously, *International Billing Services* fails to serve this purpose by allowing attorney fees to one party where the other would not be entitled to them.

There is no incentive for a party to raise a frivolous claim for attorney fees in order to "threaten a litigant with the prospect of an adverse attorney fees award and avoid the same fate if unsuccessful," as asserted in *International Billing Services.* (*International Billing Services, supra,* 84 Cal.App.4th at p. 1191.) As explained by Justice Raye in his concurring opinion, "[a] party asserting that a contractual provision authorizes the award of attorney fees takes a calculated risk that the court may agree the contract authorizes fees but nonetheless find in favor of the defendant on the underlying claim. That

risk is a sufficient deterrent to reckless claims." (*International Billing Services*, *supra*, 84 Cal.App.4th at p. 1198 (conc. opn. of Raye, J.).)

It is also asserted in *International Billing Services* that the rule stated therein "should reduce protracted litigation regarding the precise scope of a fees provision and provide parties necessary certainty." (*International Billing Services*, *supra*, 84 Cal.App.4th at p. 1192.) However, as explained by Justice Raye, it is doubtful that disputes over attorney fees require protracted litigation and, in any event, a similar amount of litigation may be required to resolve the question whether either party ever made a claim for attorney fees. (*International Billing Services*, *supra*, 84 Cal.App.4th at pp. 1197–1198 (conc. opn. of Raye, J.).)

In sum, there is no sound policy or legal basis for the broad rule adopted by this court in *International Billing Services*. That rule would instead violate the very policy considerations it purports to serve. We agree with the many state court decisions refusing to apply estoppel against a losing party who sought attorney fees under circumstances where that party would not have been entitled to such fees had it prevailed.

We emphasize the foregoing discussion applies only to cases where attorney fees are sought for the cost of the underlying litigation. Meeker sought fees for the cost of defending against the claims asserted by Base Camp. A different situation arises where the prevailing party is seeking fees for the cost of litigating the right to attorney fees. For example, if party A claims breach of contract by party B, but party B prevails in the action, party B would be entitled to attorney fees for the cost of the litigation only if party A would have been so entitled had it prevailed. However, after completion of the underlying litigation, the parties may litigate the right to attorney fees. In our example, party B would assert a right to attorney fees, while party A would claim there is no such right. If party B prevails, it will be entitled to attorney fees for the entire litigation, including the cost of proving the right to attorney fees. But what if party A prevails? Under that circumstance, party A would have proven there is no contractual right to attorney fees. However, consistent with *Reynolds Metals* and Civil Code section 1717, party A should be awarded fees for the separate litigation over the right to attorney fees.

In this matter, Base Camp lost the underlying litigation but, as we have concluded, won the battle over the right to attorney fees. Base Camp would therefore be entitled to attorney fees for the costs of defeating Meeker's claim for attorney fees. However, because Base Camp did not seek such an award, and did not appeal the judgment below, it has waived any claim for such fees.

## VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order of September 28, 2001, regarding indemnity and prevailing party attorney fees is reversed and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Base Camp shall receive its costs on appeal from Meeker. Meeker shall receive its costs on appeal from Henley. Henley shall bear its own costs on appeal.

Blease, Acting P. J., and Robie, J., concurred.

---

*See footnote, *ante*, page 456.